UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>JAMAINE HOWELL | Case No. 21-cr-10168-RGS |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Jamaine Howell robbed the TD Bank in Allston with a .45 caliber Ruger handgun and a note that read, "I have a gun." Howell handed the note to the teller while verbally reiterating the message, stating that he had a gun. Howell also confronted two other customers inside the bank and, after he got the cash from the teller, Howell took one of the bank customers out of the bank with him, telling that customer, "I have a big ass gun." And Howell did all this while on probation for prior armed robbery convictions.

In connection with this armed robbery, Howell was charged with one count of bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d) (Count One), and one count of using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two). Howell pled guilty to these charges pursuant to a plea agreement. Per that plea agreement, the government recommends that the Court sentence Howell to 48 months of imprisonment on Count One to be followed by 60 months of imprisonment on Count Two, for a total sentence of 108 months. This is a below guidelines recommendation that the government submits is sufficient but not greater than necessary considering, among other things,

1

the nature of the offense and the defendant's history of committing similar violent offenses, while taking into account the defendant's personal and medical history.

### A.   The TD Bank robbery and ensuing events

Howell's offense conduct is fully recounted in the PSR.  Put simply, Howell's conduct here was violent and threatened the lives of many people, both during the bank robbery and afterwards.

During the bank robbery, Howell brought a .45 caliber handgun into the bank, tucked into his waistband.  He first threatened the teller, and then threatened two more people inside the bank, before taking one of those people out of the bank with him by threat of using a "big ass gun."  Howell took that bank customer with him for a few blocks outside the bank before the customer managed to run away from Howell while he was distracted.

Days later, investigators learned that Howell was at a Best Western in Sharon. He was seen on surveillance video there brandishing a handgun at another hotel guest, pointing the gun at the random guest's face in the hallway.  A few days after that, investigators located Howell's car and, after a brief struggle, they placed him under arrest. At the time of his arrest, Howell had a .45 caliber Ruger handgun on him (matching the description of the handgun used in the bank robbery), and he also had a Stryker semi-automatic shotgun in the trunk of the car.

The combination of violence and firearms here is particularly troubling, and necessitates a serious sentence.

2

B. **Howell's history of violence**

Howell's violent conduct here is made worse by the fact that, at the time he committed this armed robbery, he was on probation for prior armed robbery conviction from Middlesex and Suffolk Superior Courts.

The Middlesex Superior Court armed robbery conviction was based on Howell's armed robbery of a Sunoco gas station on June 18, 2011. *See* PSR ¶ 35.[1] Howell had a firearm on him when he approached the clerk and demanded money. Howell also has a separate Middlesex Superior Court conviction for armed robbery of a Shell gas station on the prior day, June 17, 2011. *See* PSR ¶ 36. Similarly, Howell possessed a firearm during the robbery and demanded money from the clerk.

The Suffolk Superior Court armed robbery conviction was based on Howell's armed robbery of a Hess gas station on June 28, 2011. *See* PSR ¶ 38. Again, Howell possessed a firearm during the robbery and demanded money from the clerk.

This string of armed robbery convictions represents only a portion of Howell's criminal history, the rest of which is detailed in the PSR. What this portion demonstrates, though, is that despite significant sentences and probation, Howell's criminal conduct was not deterred. An escalation from his prior sentences, therefore, is necessary to afford a measure of deterrence and protection for the community that his prior sentences failed to achieve.

---

[1] This conviction does not score any criminal history point because the imposed sentence was probation only and it is more than 10 years old. The sentence in this case, though, was imposed at the same time as his other Middlesex Superior Court armed robbery conviction, for which he got 4 to 5 years committed.

### C. Guidelines sentencing range and available sentences

As detailed in the plea agreement, the parties agree that Howell's total offense level is 23. The PSR reaches the same conclusion. For Criminal History Category V, the Guidelines recommended sentence is 84 to 105 months on Count One, plus the mandatory 60 months, consecutive, on Count Two. The government's recommendation includes 48 months on Count One, which is below the GSR. The government's recommended total sentence of 108 months is also below the median and average sentence for similarly situated defendants sentenced in the last five fiscal years, per JSIN data. *See* PSR ¶ 100.

While the conduct is unquestionably serious, the government is asking for a below guidelines sentence in recognition of the defendant's personal history detailed in the PSR, as well as the mandatory sentence required by Count Two. The government therefore submits that the total sentence of 108 months is sufficient but not greater than necessary to accomplish the goals of sentencing.

### CONCLUSION

For the foregoing reasons, the government asks the Court to impose the requested sentence, as detailed in the plea agreement.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:  */s/ Charles Dell'Anno*
Charles Dell'Anno
Assistant U.S. Attorney

Date: May 9, 2023

## **CERTIFICATE OF SERVICE**

Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Charles Dell'Anno*
Charles Dell'Anno
Assistant U.S. Attorney

Dated: May 9, 2023